E-FILED
Monday, 18 May, 2015 04:11:35 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Michael W. Smith,
Joshua D. Warner,
Kristopher P. Kras
Randy J. Schertz,
Rex L. Hulbert,
      Plaintiffs.

v.s.

Gregg Scott,
Eric Kunkel,
Kevin Winters,
James Clayton,
Shan Jumper,
Sharlene Caraway,
Joseph Hankins,
David Biermann,
John Ried,
Sandra Simpson,
Liberty Health Care Corporation,
and Various Defendant(s) that will
 be named upon the discovery of their
 identities,
      Defendants.

Civil Action No.:_____

COMPLAINT

## I. JURISDICTION AND VENUE

    This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

    The Central District of Illinois is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFFS

    Plaintiffs, Michael W. Smith, Joshua D. Warner, Kristopher P. Kras, Randy J. Schertz and Rex L. Hulbert, were and are at all times mentioned herein are patients of the State of Illinois in the care and custody of the Illinois Department of Human Services. They are currently committed/detained in the Illinois Department of Human Services Treatment and Detention Facility.

## III. DEFENDANTS

    Defendant, Gregg Scott, is the Facility Director of the Illinois Department

of Human Services Treatment and Detention Facility. He is legally responsible for the operations of the Illinois Department of Human Services Treatment and Detention Facility and for the welfare of all patients of the facility.

Defendant, Eric Kunkel, is the Assistant Facility Director of the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for the operations of the Illinois Department of Human Services Treatment and Detention Facility and for the welfare of all patients of the facility.

Defendant, Kevin Winters, is the Security Director of the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for the overall security of the the Illinois Department of Human Services Treatment and Detention Facility and for the welfare of all patients and staff of the facility.

Defendant, James Clayton, is the Internal Security Investigator of the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for investigations within the Illinois Department of Human Services Treatment and Detention Facility.

Defendant, Shan Jumper, is the Clinical Director for Liberty Health Care Corporation who is subcontracted by the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for Clinical operations of the subcontracted Liberty Health Care Corporation.

Defendant, Sharlene Caraway, is the Associate Clinical Director for Liberty Health Care Corporation who is subcontracted by the Illinois Department of Human Services Treatment and Detention Facility. She is legally responsible for the Clinical operations of the subcontracted Liberty Health Care Corporation.

Defendant, Joseph Hankins, is a Security Therapy Aide (STA) of the Illinois Department of Human Services who, at all times mentioned in this complaint, held the rank of PSA/Major and was assigned to the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for the Facility Rooming Committee and Facility Behavior Management Committee.

Defendant, David Biermann, is a Security Therapy Aide (STA) of the Illinois Department of Human Services who, at all times mentioned in this complaint, held the rank of STA IV/Captain and was assigned to the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible for decisions made within the Facility Rooming Committee and Facility Behavior Management Committee.

Defendant, John Ried, is the Director of Training and Research for Liberty Health Care Corporation who is subcontracted by the Illinois Department of Human Services Treatment and Detention Facility. He is legally responsible

for the training of all Clinical Staff of the subcontracted Liberty Health Care Corporation.

Defendant, Sandra Simpson, is the Grievance Examiner for Liberty Health Care Corporation who is subcontracted by the Illinois Department of Human Services Treatment and Detention Facility. She is legally responsible for all grievance matters relating to the Illinois Department of Human Services Treatment and Detention Facility.

Defendant, Liberty Health Care Corporation, is a subcontracted corporation that provides Sex Offender Specific Treatment to all patients of the Illinois Department of Human Services Treatment and Detention Facility. They are subcontracted by the Illinois Department of Human Services Treatment and Detention Facility.

Each Defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

### III. INTRODUCTION

Plaintiffs and proposed Class Members allege that the Illinois Department of Human Services under the direction of "Acting" Secretary Gregory M. Bassi and Liberty Health Care Corporation fail to 1) Provide adequate treatment; 2) Deny all committed/detained patients the Constitutional Right to be free from punishment; 3) Deny patients with less restrictive alternatives; 4) Deny all patients the Constitutional Right to be free from inhumane treatment; 5) Deny all patient the Constitutional Right to religious freedom; 6) Unreasonably restrict all patients' First Amendment Right to their freedom of speech and freedom of association; 7) Conduct unreasonable searches and seizures under the Fourth Amendment; 8) Unconstitutionally apply 725 ILCS 207/1 known as the Illinois Sexually Violent Persons Civil Commitment Act; 9) Unconstitutionally apply Section 299.200 Detention Facility Subpart B: Detention and Evaluation of Title 59 Illinois Administrative Code Chapter 1; 10) Violate Court ordered treatment; 12) Commit Racial and Sexual Discrimination based on race and sexual orientation; **and 13)** Inadequate Medical Care and failure to abide by State Fire Codes.

### IV. COMPLAINT

Plaintiffs and proposed Class Members (Plaintiffs) assert that the State of Illinois 90th General Assembly on January 9, 1997 introduced Senate Bill Number 6 which creates the Illinois Sexually Violent Persons Civil Commitment Act (SVP Act) which became law on January 1, 1998. The Illinois Department of Human Services (DHS) has entered a legally binding contract with Liberty Health Care Corporation (Liberty) and the Rushville Treatment and Detention Facility (TDF). The Plaintiffs

Page 4

have been ordered to be held by the TDF after a Circuit Court ordered the Plaintiffs held either as a detainee or as a committed person under the Act after a trial by jury or bench or by self-commitment. The committed/detained Plaintiff may elect to enroll in Sex Offender Specific Treatment. "Acting" Secretary Gregory M. Bassi, is the Chief Administrative Officer of the State DHS Agency and thus has jurisdiction of the TDF for all male patients currently housed in Rushville, Illinois, thus having authority over the TDF. Plaintiffs assert that there is no oversight on the way that the program is being ran by both the former and current administrators. The current Program Facility Director is Gregg Scott, Assistant Facility Director is Eric Kunkle and Security Director is Kevin Winters, which all of these people are current Administrators of the TDF. Liberty has the state contract to provide sex offender specific treatment to all the Plaintiffs in the TDF and thus is in charge of the individual treatment of the Plaintiffs. Liberty does not provide the 18 hours of sex offender specific treatment as outlined in the state contract. Thus constituting a breach of contract. Yet, due to the lack of oversight, the terms of the state contract are deliberately not enforced. Every Phase of the 5 Phase program as well as the various treatment teams at each phase level get different hours of treatment. The Plaintiffs assert that the Administration of the TDF intentionally interfere with the way that Liberty runs the treatment groups since the programs conception. Liberty runs 4 different treatment teams consisting of Blue, Green, Orange and Red Teams. Each team handles all Phases of treatment, 1-5. For example, The Red Team has 2 Post-Disclosure Groups. they are exactly the same group, only they have too many patients to put into these groups so they have created more than one group. One group is ran by Dr. Hernandez, which receives 6 hours a week of treatment while Mr. Queens Group receives 7 1/2 hours a week of treatment. Some of the other Treatment Teams receive a totally different amount of hours of treatment than these two groups in Post-Disclosure. Plaintiffs assert that new therapists, Interns and Post-Doctorates stay with the program until they are eligible to get their license and then they leave the TDF to start a career. Then a new set of Interns and Post-Doctorates come along and the process repeats all over again. Each time a new set of Interns and Post-Doctorates comes to the Program, it takes about 1-2 months to bring them up to speed by reviewing previous completed treatment work done by the Plaintiffs. Thus slowing down the Plaintiffs progress of moving forward in treatment creating the feelings of hopelessness and despair due to the lack of progress in treatment. Some of the new Interns and Post-Doctorates will make the Plaintiffs go back and represent their completed treatment work and that will take sometimes 6 months to sometimes 1 year to complete. Interns and Post-Doctorates aren't suppose to facilitate groups by themselves, yet that is quite often the case

here at the TDF. Plaintiffs have been informed by the therapists on routine basis that some of their previously finished and accepted treatment group assignments have been lost or misplaced thus requiring them to re-write and represent the assignment, which in fact has set some patients back for at least up to 1 full year or more to complete the assignment again. The way that the therapists handle the assignments of the patients and process it, it looks to the patient as if there is no end in sight causing feelings of hopelessness and despair which causes many patients to actually quit treatment thus turning their commitment in the SVP Program virtually a Life Sentence, which a lot of the patients end up dieing waiting to get out. As of March 25, 2015, there are 552 Patients committed/detained in the TDF. Since 1999, only 75 patients have been Conditionally Released and only 13 of those Conditionally released have been completely Discharged. Too many to count have died in the TDF waiting for Conditional Release and/or Discharge of which never came to them before death. Yet, those who do receive Conditional Release are violated or brought back for a "tune-up" (90 day stay and then re-released) for Minor Rule Violations numerous of times and sometimes never let out on Conditional Release ever again. As of January 1, 2015, in order to move from Phase to Phase of the treatment program, Liberty has required that every patient must complete and pass a polygraph test "cleanly" even though a polygraph test is not admissible in a court of law. The TDF is set up as it was intended, as a prison. It looks like a prison and is painted battleship gray like every prison in the Illinois Department of Corrections (DOC). The cells are prison regulation size with furnishings such as a set of wall-mounted bunk-beds, combination sink and toilet, fixed steel mirror, and combination desk/stool. The Plaintiffs are forced to lock-up at night in this cell with a locked closed steel door with a chuck hole just like in the DOC. Showers are kept locked at all times. The rules of the TDF are practically mirror images of the rules enforced and implemented in the DOC. Patients are forced to be in their cells for count times at various hours throughout the day and are forced to carry a Picture I.D. Card with them at all times whenever they leave their units for anything. When a patient violates a rule, ALL patients are punished for it. Example: A patient got caught with inappropriate movies and pictures on his Playstation 3 Gaming System. Now all patients are not allowed to have a Playstation 3, XBOX360 or any other Game System that has a Hard Drive. The Rooming Committee who is headed by Joseph Hankins has the authority to put patients in rooms with other patients. The Rooming Committee consists of Security and Clinical Staff with input from that patients treatment team. When assigning patients to rooms and roommates, members

of the Rooming Committee consisting of Joseph Hankins, Paula Lodge and Deb Tallie repetitiously refuse to adhere to Title 59 of the Illinois Administrative Code, Chapter I, subsection 299.200 - Subpart B: Detention and Evaluation which states (in part)...To the extent possible considering operational program and security needs, detained persons shall be kept separate from those who have been civilly committed upon finding of a jury trial or a bench trial to be sexually violent. The TDF Administration of DHS, nor the Rooming Committee Members, nor Clinical Staff employed by Liberty are concerned with the safety of patients. They put patients in rooms with other patients that fit their victim profiles thus jeopardizing a patients safety. Even if a patient tells Security and/or Clinical Staff that he is afraid of his roommate, the patient is forced to live with him or refuse housing in which the later results in disciplinary actions due to a patient trying to stay safe. In the case of Rhodes v. Chapman, 452 U.S. 337 (1981) the United States Supreme Court held that housing two inmates in a cell designed for one constitutes cruel and unusual punishment. The court rejected this claim stating that the Constitution does not mandate comfortable prisons. The extent that such conditions are restrictive and even harsh, they are a part of the penalty that criminal offenders pay for their offenses against society. Plaintiffs assert that they are not prisoners nor are they in prison and that as such they should not be forced to live in a cell with another patient as a roommate as the cells are built for one. That in the case of Wilson v. Seiter, 501 U.S. 294 (1991) the United States Supreme Court held that an 8th Amendment violation of cruel and unusual punishment due to his confinement in an overcrowded facility with inadequate heating and cooling, improper ventilation, excessive noise and insufficient storage space. The Supreme Court of the United States ruled and remanded the case back to the lower courts for further proceedings. Plaintiffs assert that this is a facility wide problem at the TDF in Rushville, Illinois.

  Plaintiffs assert that due to the stamp "Sexually Violent Persons Treatment and Detention Center" that the Defendants place onto the Plaintiffs' outgoing mail with the exception of Attorney/Legal mail causes their mail to be censored. Plaintiffs further assert that this stamp further infringes upon their First Amendment Right of Freedom of Association within the United States Constitution. When Plaintiffs have attempted to correspond with prisoners of DOC and various of other DOC's, some mail is censored especially inmates from Illinois DOC's. In Bressman v. Farrier, 825 F.Supp.862 (7th Cir. 1992). Courts have generally upheld restrictions on mail between prisoners. Plaintiffs assert that this cannot apply to them as they are not prisoners, yet civilian detainees/civilly committed persons. Plaintiffs who are not yet civilly committed are also forced to have

mail rejected by family, friends and associates due to the discriminatory stamp that is placed on all envelopes sent out by the Plaintiffs when an easier alternative is available. The TDF could either not put a stamp on the envelopes at all such as when Attorney/Legal mail is sent out or the TDF could incorporate a stamp that states, "This correspondence is from a Resident of a DHS Facility and NOT a DOC Facility", which is the same type of stamp that the State of Minnesota Sexually Violent Persons Civil Commitment Program utilizes. The TDF Administration has the tendency to prohibit the Plaintiffs from receiving any and all publications unless paid for in advance for by the Plaintiffs. In the case of Crafton v. Roe, 170 F.3d 957 (9th Cir. 1999). Ruled that "any facility/institution that implements a rule or policy as this is unconstitutional". Furthermore, the Administration at the TDF deny Plaintiffs and any vendors used by the Plaintiffs a procedural due process right in which the court in a case of Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004). Held that "patient/prisoners have a Constitutional Right to procedural due process when publications/packages are rejected". In the case of Bonner v. Outlaw, 552 F.3d 673 (8th Cir. 2009). The Court ruled that "Due process applies to rejected mail regardless whether communication occurs in the form of a letter, package, newspaper or magazine". In the case of Bounds v. Smith, 430 U.S. 817, 821 (1977), the United States Supreme Court held "that patients/prisoners have a constitutional right of access to the courts, thus requiring that all States including the State of Illinois to shoulder affirmative obligations to assure that all patients/prisoners meaningful access to the courts. The Supreme Court went further holding that institutional staff must assist patients/prisoners in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law". The Plaintiffs state that the TDF Law Library consist of twenty or so Legal Books, mostly outdated, and two Law Computers in which a large vast amount of patients don't know how to use them. In Rhodes v. Robinson, 612 F.2d 766, 769 (3rd Cir. 1979), the court held that "third party standing for jailhouse lawyer because many prisoners and patients are unable to prepare legal materials and file suits without assistance". The TDF Administrators have an unwritten rule that prohibit jailhouse lawyers or paralegals from providing any assistance. The TDF Staff and Administration retaliate against patient law clerks/paralegals for providing legal assistance to patients/prisoners including but not limited to Behavior Reports completely disregarding a 2001 Court decision in Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001), "that officials have a tendency to retaliate against all resident law clerks". The TDF Administration recently altered the patient Grievance process with a deterrant. All TDF patients are required to

within the facility, yet patients know that there is a large amount of racial discrimination that occurs. Foe Example: Key-jobs are mainly held by African American or Hispanics. Also, the Rooming Committee Staff Member, Joseph Hankins, allows racial discrimination and sexual discrimination to occur. The Rooming Committee will deny patients' requests to room with patients that they choose. For Example: They refuse to allow an African American and a Caucasion to live together, yet two of the same races can live together. They also refuse to allow two patients of the same Bi-Sexual/Homosexual sexual orientation to live together. especially if one or both of them have a history of Sexually Acting out within the facility or in DOC out of the assumption that all they want to do is Act Out with each other. A vast majority of the TDF population is either Bi-Sexual or Homosexual. The TDF's Administrations view on a patients sexual orientation if they are Bi-Sexual or homosexual is that they only want to Sexually Act Out with other patients, which is further from the case most times. For Example: Plaintiff Michael W. Smith who identifies as Homosexual and Plaintiff Joshua D. Warner who identifies as Bi-Sexual have tried to move into a room with each other as they are support members of each other, have common interests and goals and are working hard to get out of this facility by doing the "treatment" provided by Liberty, however, some Liberty Staff deem the move as an appropriate move while other Liberty Staff and all Security Staff deem the move to be highly inappropriate. Example 2: Plaintiff Kristopher P. Kras who identifies himself as Homosexual and Plaintiff Joshua D. Warner who identifies himself as Bi-Sexual have also attempted to become roommates, only to have these same Liberty and Security Staff deem this move to also be inappropriate. When the TDF Administration knows that you are Bi-Sexual or Homosexual, They put a target on your back restricting you from living with another Bi-Sexual or Homosexual, Deny you certain jobs (tasks), Security looks down upon you with disdain, In "treatment" groups you are targeted for your choice of lifestyle by Liberty Staff, You are consistently questioned about allegations that you are in a relationship with another patient and/or having sex with another patient - when in fact most of these things are further from the truth and only started by those who are homophobic. The TDF Administration and Liberty routinely subject patients to cruel and unusual punishment with their blanket policy to punish everyone for one persons rule violation. STA IV David Biermann told Plaintiff Randy J. Schertz that it is a whole lot easier to punish all patients than it is to try and punish only the patient who violated the rule. For Example: One patient was caught with unauthorized and inappropriate movies and pornography on his Playstation 3 Game Systems Hard Drive so the TDF Administration banned all patients from being able to purchase and own a Playstation 3 Game

System, XBOX360 Game System or any other Game Systems that have a Hard Drive. If you already have one of these systems you are allowed to keep it as long as you don't break any rule violations to have it taken from you and then you must send it home and can never get it back in here. However, the patient who got caught with the unauthorized and inappropriate movies and pornography on his Playstation 3 Game System, was in fact allowed to keep his Game System. Now the TDF Administration tell patients that they can purchase a Playstation 2 Game System without a Hard Drive but it can ONLY purchase one from an approved vendor that they choose however the vendor that they choose doesn't even sell or carry Playstation 2's anymore because the are obsolete, that nobody carries anymore new Playstation 2 Game Systems. So in fact the TDF Administration is refusing to allow patients to now even purchase or to own a Gaming System. Patients use to enjoy unlimited access to the "patios" during the day only to have it taken away by the TDF Administration when patients have attempted to escape, fight and/or sexually act out on the patios. However, the STA's who are suppose to do their jobs by monitoring the security camera footage of the patios on the security monitors located in the Control Rooms on each unit, didn't do their jobs properly in the first place. Nor did the STA's who were suppose to physically go out on the patios for security checks as their jobs require them to do. The TDF Administration decided to punish all patients and close the patios down indefinitely for a few patients behaviors with no way of ever earning this back. Nor did the TDF Administration punish the numerous of STA's who earn up to roughly $30,000 per year for failing to properly do their assigned jobs. Plaintiffs find it to be cruel and unusual punishment and even inhumane to have STA's tell a patient to "get on your knees and kiss her feet (a female contracted employee)", let alone tell patients that they are allowed to purchase an item from an outside vendor only when it arrives at the TDF to turn around and tell this patient that he can't have it and he needs to return it to the vendor or destroy the item all together and then this has created drama and chaos between the patient and his family.

    Plaintiffs assert that the TDF Administration who are in direct control of the day-to-day operations of the SVP Program operate a "Lock them up for life" mentality and throw alittle bit of treatment in for "Cosmetic" reasons, so the SVP Program Law will pass constitutional challenges. The Plaintiffs have very little access to educational programs. Very little treatment is provided to the patients by Liberty so that the TDF Administration can claim that this is a treatment facility and not a prison and only provide some "G.E.D." classes so that they can claim that they offer the patients a chance to get an education and enough

of a reason to milk the State and Federal Governments out of thousands and if not millions of dollars for educational purposes. Plaintiffs believe that there is no end in sight in this SVP Program creating an atmosphere of hopelessness and despair as there is no medium security, minimum security and/or any step-down program for those who are progressing and showing signs of rehabilitation. Patients are subjects to prison style life which are practically mirror images of the Illinois DOC inmate lifestyles yet at times more often than not the patients in the TDF are treated worse than a DOC inmate ever would be treated. When a patient leaves the TDF for a court hearing, medical reason , ect. they are stripped searched, chained up by leg irons, hand cuffs which are attached to a waist-chain that is ran through at least one belt loop of a patients pants and some patients are even required to waer a "black box" style hand-cuffs, making it alomost impossible to drink and/or eat their meal provided to them when away from the tDF. Patients who are found guilty of a Rule Violation are told the will lose their Playstation Game System, XBOX Game System, DVD Player and/or Stereos if they don't want to become an "informant" (snitch) for Internal Affairs Officer James Clyton (Defendant). Patients are also placed in double jeopardy situations by the Vocational Rehab. Director if found to be in violation of a rule violation and found guilty by the Behavior Management Committee, she also takes it upon herself to fire a patient from his job (task) even if it had nothing whatsoever to do with his job. Also TDF Administration claims that these jobs are educational tasks and not jobs however the Vocation Rehab. Director denies patients a certain job (task) if they don't posess the proper education for that job. She even denies patients educational opportunities that arise if that patient has had any behavioral issues. Patients are also denied a fair wage for the jobs (tasks) that they are doing. Patients are providing manual labor for the TDF, the State of Illinois and for the TDF's subcontractors. This manual labor is saving the State of Illinois and TDF subcontractors millions of dollars since the SVP Program conception in January 1998. Patients are only "paid" with "Points" and these range from 3 Points to 8 Points per patient per week to be spent on expired food and beverages in the "Life Reward Comnissary". Points are in a form of Company Script only usable here at the TDF and cannot be transferred into any cash value. The "Life Reward Commissary" does not accept cash. If a patient has trouble seeing how his actions as an offender was wrong, Liberty Staff will suspend the patient from treatment groups thus violating the court order that is placed upon the patient committed for sex offender treatment thus allowing the Liberty Staff to give the suspended patient a ultimate Life Sentence. Denying a patient Sex Offender Specific Treatment is not only punishing the patient but is placing the patient in cruel and unusual

punishment and inhumane treatment and mental cruelty all because a patient doesn't yet understand how his offending is wrong. Evaluators claim we all have mental disorders which cause us to offend yet when a patient doesn't see or understand how his offenses are wrong, instead of working with the patient, they suspend him from groups. For Example: Plaintiff Rex L. Hulbert was suspended from treatment groups because he didn't see that his offending was wrong. He could have faked knowing/believing that he understood what he did was wrong but instead of lying he chose to be truthful so he could learn about himself and hopefully get out of the TDF and not re-offend in the future but he got suspended for being truthful in group.

Plaintiffs right to be free from discrimination are denied because they are being discriminated against in the form of Sexual Discrimination such as when a female is Civilly Committed as a SVP, she is immediately placed on Conditional Release yet when a male is Civilly Committed he is placed not on Conditional Release but in the TDF instead until his Circuit Court and/or SVP Evaluator deems that he has made sufficient progress in treatment to be conditionally Release from the TDF.

Defendants conduct unreasonable searches and seizures of the patients cells. Patient cells are shook down for no reason randomly and sometimes they are shook down because as STA's sometimes say, "You haven't been shook down in awhile". Other times patients are told that the reason that they are being shook down is because a STA shook another patient down who causes trouble and that patient complained that nobody else is being shook down, only him, so STA's end up shaking multiple patients down in order to "look" good.

The TDF is in violation of Public Act 98-0597 known as the Religious Freedom and Marriage Fairness Act which took effect on June 1, 2014. This law allows persons of the same-sex to become legally married. Foe Example: Two men or two women may marry. On June 1, 2014, a change in state law took effect allowing same-sex couple to marry in the State of Illinois. There are patients in the TDF who wish to obtain marriage licenses. When the TDF Administration found out the response was a blanketed NO. This amounts to sexual discrimination based on sexual orientation. Patients of the TDF wish to have the Constitutional Right to marry another patient and put an end to this discriminatory policy that is in place. For Example: In the Minnesota SVP Program the Administration announced that they will allow patients of that program to marry one another while in treatment as they don't want to interfere with a patients right to marry another patient and went further stating that because a couple gets married while in the program it doesn't necessarily mean that they will be placed in the same cell. The TDF

Administration blatantly refuse to allow this to take place and refuse to work out the ramifications of the new State Law. Plaintiffs assert that they should be allowed to marry another patient and not have their rights to marry taken away too as their other rights have already been so taken. The Illinois DOC recently announced that they would be reviewing and changing their policies to accommodate an inmates right to marry another inmate. Patients of the TDF who are Bi-Sexual and Homosexual and wish to marry and carry out their right to marry are given second-class status as well as third-class status. Back in June 2013, the United States Supreme Court issued a landmark decision that altered the entire legal landscape for all Americans and particularly for the residents of the State of Illinois including all patients of the TDF. The United States Supreme Court struck down the Defense of Marriage Act allowing the protections of Federal Law to legally married same-sex couples.

## V. RELIEF REQUESTED

Wherefore, the Plaintiffs request that this Court:

(a) Declare that Defendants' actions and infractions are unlawful and unconstitutional for the reasons specified above;

(b) Enter a preliminary and permanent injunction directing Defendants to:

1. Allow patients of the TDF to correspond with inmates in the Illinois DOC as well as the other various States DOC's and refrain from violating the patients First Amendment Right of Freedom of Association.

2. Stop discriminating patients by placing a stamp on all patients outgoing mail "Sexually Violent Persons Treatment and Detention Center" and instead either not use a stamp at all or use a stamp that states "This Correspondence is from a resident of a DHS Facility - NOT a DOC Correctional Facility".

3. Stop violating a patients procedural Due Process Rights when publications and/or packages are denied/rejected as the 10th Circuit Court in 2004 ruled we have a Constitutional Right to Procedural Due Process.

4. Start following a United States Supreme court Case Bounds v. Smith.

5. Hire a Paralegal or assign a patient with Educational training as a Paralegal to work in the Law Library.

6. Allow a patient who goes before the Behavioral Management Committee to have a Due Process Right by providing a patient who is mentally disabled to acquire assistance of a jail house lawyer or Paralegal during the Behavior Management Committee Hearing.

7. Comply with Title 59 Illinois Administrative Code, Chapter I subsection 299.200 - Subpart B: Detention and Evaluation.

8. Stop violating patients State and Federal Constitutional Rights.

9. Stop utilizing the Penile Plethysmograph (P.P.G.) and follow the case U.S. v. Powers as the Court found that this test was not valid under the Daubert Standard.

10. Create a policy allowing patients to legally marry another patient and comply with Public Act 98-0597 of the Religious Freedom and Marriage Fairness Act.

11. Create a policy allowing two Bi-Sexuals or Homosexuals to reside together as roommates and stop assuming that they want to reside together for sexual purposes.

12. End all discriminatory policies and procedures at the TDF.

13. Create an independent outside "Watchdog" agency to handle all patient complaints and/or grievances.

14. Appoint an ombudsman to act as a liaison between patients and TDF and Liberty Administrations.

15. Stop all racial discrimination based on race.

16. Stop all sexual discrimination based on sexual orientation.

17. Enforce all State Contracts.

18. Abide by all Court Orders.

19. Create a Policy of complete openness and transparency.

(c) Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 28 U.S.C. subsection 1988 and 42 U.S.C. subsection 12205;

(d) Award Plaintiffs compensatory and punitive damages for the violations of their Constitutional and Legal Rights;

(e) Award any such further relief as the Court may deem just.

Date: May 18, 2015

Respectfully submitted:

Michael W. Smith, Plaintiff

Joshua D. Warner, Plaintiff

Kristopher P. Kras, Plaintiff

Randy J. Schertz, Plaintiff

Rex L. Hulbert, Plaintiff
Department of Human Services
Treatment and Detention Facility
17019 County Farm Road
Rushville, IL 62681-4042



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
OFFICE OF THE CLERK

# RUSHVILLE
## SCANNING COVER SHEET

**Notice – Please read and carefully follow these instructions.**

1. Each pleading must have this cover sheet on top.
2. Each pleading must be legible. Typed, double-spaced pleadings are preferred.
3. All pages must be numbered.
4. Each pleading must be scanned separately as one complete document. A pleading may not be scanned page by page. If the pleading is more than 25 pages, then the pleading must be scanned and submitted in multiple emails with a maximum size of 25 pages. The subject line of each email should specify the range of pages included within. (For example, a 40 page pleading would be broken into 2 emails, the first with a subject line "Email 1 of 2 – Pages 1-25" and the second with a subject line of "Email 2 of 2 – Pages 26-40".)
5. Discovery requests and responses are not filed with the Court unless they are part of a motion to compel. Discovery requests and responses shall not be electronically filed per Local Rule 26.3. However, a Certificate of Service may be scanned stating you have served your discovery documents on the other parties in the case.
6. Only lines and boxes included on this form should be filled out. Do not provide any other information regarding your pleading on this Scanning Cover Sheet.

**Please complete the following (Print):**

Date: 5/18/2015

Name: Kristopher P. Kras et al. v. Gregg Scott, et al.

Case Number: _____ ☒ (Check here if this is a new case)

**Type of Pleading (Check only one):**

☒ Motion / Petition
☐ Response / Reply
☐ Other (Specify) _____

Title of Pleading: Complaint
(For Example, "Motion to Compel" or "Response to Summary Judgment")

Number of Pages for this Pleading (Not including Scanning Cover Sheet): 25

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Michael W. Smith,
Joshua D. Warner,
Kristopher P. Kras,
Randy J. Schertz,
Rex Hulbert,
      Plaintiffs.

v.s.

**SUMMONS**

Civil Action No.:_____

Gregg Scott,
Joseph Hankins,
Sharlene Caraway,
Shan Jumper,
Eric Kunkel,
David Biermann,
Kevin Winters,
James Clayton,
John Reid,
Sandra Simpson,
Liberty Health Care Corporation,
and Various Defendant(s) that will
 be named upon the discovery of their
 identities,
      Defendants.

TO THE ABOVE NAMED DEFENDANTS:

    You are hereby Summoned and required to serve upon the Plaintiffs, whose address is **DHS-TDF, 17019 County Farm Road, Rushville, IL 62681-4042**, an answer to the Complaint which is herewith served upon you, within 20 days after service of this Summons upon you, exclusive of the day of service, or 60 days if the U.S. Government or Officer/Agent thereof is a Defendant. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

_____    _____

Clerk of the Court                                        Date